IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM B. ANDERSON, | No. 2:23-CV-2260-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| S. HALBRITTER, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's second amended complaint, ECF No. 14.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is

1

entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. BACKGROUND

### A. Procedural History

Plaintiff initiated this action with a pro se complaint filed on October 5, 2023. See ECF No. 1. Plaintiff filed a first amended complaint as of right on October 13, 2023. See ECF No 5. Before the Court could address the sufficiency of Plaintiff's first amended complaint, Plaintiff filed motions to supplement his pleading in November and December 2023. See ECF Nos. 9 and 10. The Court granted Plaintiff's motions, see ECF No. 12, and Plaintiff filed the currently pending second amended complaint on July 15, 2024, see ECF No. 14.

### B. Plaintiff's Allegations

Plaintiff names the following as defendants: (1) S. Halbritter, an educational instructor at Mule Creek State Prison (MCSP); (2) K. Rodgers, a Correctional Captain at MCSP; (3) M. Banks, a Correctional Lieutenant at MCSP; (4) P. Covello, the Warden at MCSP; (5) S. Almeida, a prison librarian at MCSP; (6) C. Huthinson, a Correctional Officer at MCSP; (7) D. Radu, a Correctional Officer at MSCP; and (8) Saavedra, a Correctional Officer at MSCP. See id. at 3-4, 11. K. Gibbs, who was named in the original complaint, is no longer named in the operative second amended complaint. Plaintiff generally alleges that Defendants retaliated against him, in violation of his rights under the First Amendment. See id. at 1-2.

///

///

2

Plaintiff states that he is a participant in the prison's mental health services delivery system Enhanced Outpatient Program (EOP). See id. at 6. According to Plaintiff, he was housed in a psychiatric housing unit that specialized in his therapeutic needs. See id. As part of his mental health treatment plan, Plaintiff was assigned to an Adult Basic Education class. See id.

On February 16, 2023, while at his class, Plaintiff was experiencing a mental health crisis. See id. Defendant Halbritter instructed Plaintiff to exit her classroom and speak with Officer Saavedra, who wrote a "CDC 128 Chrono" documenting Plaintiff's health crisis. See id. About a month later on March 13, 2023, Halbritter then charged Plaintiff with a rules violation due to Plaintiff's absence from his assigned class. See id. Plaintiff attended Halbritter's class again on March 16, 2023. See id. When he entered Halbritter's class, Plaintiff informed Halbritter that he would be filing an inmate grievance against her for being insensitive following his sister's death and filing a false rules violation reports against him. See id. at 6-7. Plaintiff states that Halbritter became irate and instructed Plaintiff to leave the classroom. See id. Plaintiff claims that Halbritter then falsified a second rules violation report "with the intent to have him permanently removed and unassigned from her classroom." Id. at 7.

Next, Plaintiff claims that as he was standing in front of the program office on June 15, 2023, waiting for his name to be called for canteen, Halbritter was informed that Plaintiff was on the yard. See id. According to Plaintiff, Halbritter sent an e-mail to Defendant Rodgers, providing him a "false tale" about Plaintiff harassing Halbritter. See id. Plaintiff states this was done in an effort to have Plaintiff placed in Administrative Segregation. See id. Plaintiff claims that, as a result of this e-mail, Rodgers informed Defendant Banks that Plaintiff was being placed on escort status and would be required to be escorted by correctional staff when entering the education department, which contains the prison law library. See id. Plaintiff states that Banks told Rodgers that Halbritter's allegations were false because she witnessed Plaintiff standing in the canteen call line the entire time Halbritter was on the yard on June 15, 2023, and that Plaintiff never interacted with Halbritter. See id. Nonetheless, Rodgers informed Plaintiff that he must inform Banks whenever he wants access to the law library as an escort would be required. See id.

On July 19, 2023, Plaintiff notified Banks of his request to access the law library. See id. Banks instructed Defendant Hutchinson to escort Plaintiff and supervise him while he was in the law library. See id. While in the law library, Hutchinson stood behind Plaintiff, causing him to feel uncomfortable which triggered a mental health episode. See id. Plaintiff terminated his law library session and exited the education department. See id. Later that day, Plaintiff informed Banks of his request to return to the law library in order to complete and submit a "CDC Form 2171" requesting Priority Legal Use (PLU) status in the law library due to an upcoming hearing in the Placer County Superior Court. See id. at 7-8. Plaintiff was again escorted to the education department by Hutchinson. See id. at 8. There, Plaintiff submitted his PLU request form, which was approved by Defendant Almeida. See id. After this, Plaintiff was escorted by Hutchinson out of the education department. See id.

Plaintiff claims on information and belief that Halbritter informed Almeida that Plaintiff was filing inmate grievances against her. See id. According to Plaintiff, Almeida then "conspired with HALBRITTER to falsely accuse ANDERSON of falsifying documents to prevent ANDERSON from entering the education department to use the law library." Id.

On July 20, 2023, Plaintiff informed Banks that he needed to access the law library, and Banks directed Officer Aguilar to escort Plaintiff. See id. The next day, Plaintiff was summoned to the facility program office and, upon approaching the office was immediately put into handcuffs by Officers Yi and Doe. See id. Plaintiff was taken to a holding cage. See id. There, he asked Defendants Hutchinson and Radu why he had been placed in handcuffs and a holding cell. See id. The officers said they did not know. See id. According to Plaintiff, while detained in the holding cell, he was approached by Defendant Banks who informed Plaintiff that he was being sent to Administrative Segregation pending an investigation into the harassment alleged by Defendant Halbritter. See id. Plaintiff was informed by Defendant Rodgers that Halbritter had e-mailed Defendant Covello, the prison warden, who ordered Plaintiff's placement in Administrative Segregation. See id.

/ / /

/ / /

4

On July 24, 2023, Rodgers appeared at Plaintiff's cell door in Administrative Segregation and "slid an Administrative Review paper without providing ANDERSON with his right to request witnesses and noted on the paper that ANDERSON refused to sign it." Id. at 8-9.

Plaintiff was released from Administrative Segregation and, on September 21, 2023, Plaintiff checked into the facility clinic for his scheduled appointment and was told to wait on the yard. See id. at 9. Defendant Hutchison saw Plaintiff on the yard and sent him to the clinic. See id. Once Plaintiff entered the clinic, Hutchinson "began using derogatory language toward ANDERSON." Id. After Plaintiff saw the clinic nurse, he reported to his assigned housing unit and was waiting to be let into the building. See id. Plaintiff was then called to the program office and, once there, Hutchinson threatened Plaintiff with a disciplinary report and told Plaintiff things would get worse if Plaintiff continued filing inmate grievances. See id.

Plaintiff then left and proceeded to walk back to his housing unit "when the yard was abruptly put down." Id. According to Plaintiff, Defendant Radu and Officer Casares approached Plaintiff, placed him in handcuffs, and escorted Plaintiff to his cell. See id. When Plaintiff approached his cell, Defendant Radu allegedly said: "This is the special treatment you get when you file 602's (grievances) against us." Id. Radu further said: "You live by yourself, even better, I am going to get you a cellmate that will take care of you." Id. Once inside the cell with the door closed, Radu then called Plaintiff a "bitch and coward" for closing the cell door. Id. Plaintiff informed Radu that he would be filing an inmate grievance after Radu continued to display an ongoing pattern of harassment. . . ." Id. at 10.

Plaintiff states that, on October 4, 2023, he was served with a copy of a "fabricated-fraudulent" rules violation report written by Radu. Id. A disciplinary hearing was held on October 11, 2023, at which time Plaintiff was found not guilty of a rules violation. See id.

Plaintiff's remaining allegations at paragraphs 36 through 39 concerns Plaintiff's supplemental claim of continuing retaliation against Defendant Saavedra following the filing of this action. See id. at 11-12. Plaintiff states that he submitted a staff misconduct complaint against Saavedra on August 28, 2023, concerning concealment of evidence and a conspiracy to

1 violate Plaintiff's civil rights.  See id. at 11.  On August 31, 2023, Plaintiff submitted another staff

2 misconduct complaint against Saavedra "for obstructing administrative process and unethical

3 conduct."  Id.

4 On October 5, 2023, Plaintiff attempted to use the law library following a recent

5 ban.  See id.  According to Plaintiff, when entering the education department, Defendant

6 Saavedra stated: "You come in here and remain inside, under no circumstance you are not

7 allowed to use the restroom whatsoever or you will be punished."  Id.  Plaintiff states that

8 Saavedra added: "I'm going to show you how we treat inmates who report staff misconduct."  Id.

## II.  DISCUSSION

Plaintiff alleges retaliation in violation of his constitutional rights.  Plaintiff's claims as against each named defendant are discussed below.

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes, 408 F.3d at 568.

/ / /

/ / /

Halbritter

Plaintiff states that, after telling Halbritter that he would be filing a grievance against her arising from the events in the classroom on February 16, 2022, Halbritter issued Plaintiff a false rules violation report. Plaintiff also claims that Halbritter also sent a false e-mail that Plaintiff was harassing her on June 15, 2023. As a result, Plaintiff was required to obtain an escort to go to the education department, where Halbritter worked. Plaintiff claims that Halbritter conspired with another defendant to have Plaintiff banned from the education department because Plaintiff had filed grievances against her. According to Plaintiff, Halbritter also informed Warden Covello about the false harassment charge, and as a result Covello placed Plaintiff in Administrative Segregation pending an investigation. The Court finds these allegations sufficient to plausibly state a cognizable retaliation claim against Defendant Halbritter.

Rodgers

Plaintiff states that Rodgers was sent a false e-mail by Halbritter concerning the alleged harassment on the yard on June 15, 2023. This resulted in Rodgers ordering that Plaintiff be escorted anytime he wanted to go to the education department even though Banks told Rodgers that the allegation was false because he saw that Plaintiff had no contact with Halbritter that day. The Court finds that these facts fail to state a retaliation claim against Rodgers. Specifically, Plaintiff has not alleged that Rodgers took any adverse action against Plaintiff. Plaintiff also has not alleged facts which would allow for the inference that Rodgers knew that Plaintiff had engaged in protected conduct. In particular, Plaintiff has not alleged facts to show that Rodgers knew that Plaintiff had filed grievances against Halbritter or any other prison official. Plaintiff will be provided leave to amend as to Defendant Rodgers if he chooses.

Banks

Plaintiff alleges that, after Halbritter made the false accusations of harassment, Rodgers directed Plaintiff to ask Defendant Banks for an escort anytime he wanted to go to the education department. On various occasions, Banks provided an escort or directed another officer to do so. Banks also allegedly informed Plaintiff that he was being sent to Administrative Segregation pending an investigation into the harassment charge. The Court finds that these

allegations do not support a retaliation claim because Plaintiff has not alleged that Banks took adverse action and because Plaintiff has not alleged that Banks had knowledge of Plaintiff's protected activities. Plaintiff will be provided an opportunity to amend should he wish to continue to assert a claim against Defendant Banks.

### Covello

Defendant Covello is alleged to be the prison warden. According to Plaintiff, Covello ordered Plaintiff's placement in Administrative Segregation pending an investigation in the charge that Plaintiff harassed Halbritter. This allegation does not support a retaliation claim. While placement in Administrative Segregation can be considered adverse action, there are no facts alleged to suggest that Covello did so because Plaintiff had engaged in protected activity. There are no allegations indicating that Covello was aware of Plaintiff's inmate grievances at the time of his order to place Plaintiff in Administrative Segregation. The facts alleged indicate that the placement was to allow for an investigation into Halbritter's harassment claim, not because Plaintiff had filed grievances. Plaintiff will be provided an opportunity to amend should he wish to proceed further against Defendant Covello.

### Hutchinson

On direction from Banks, Hutchinson escorted Plaintiff to the education department on July 19, 2023, to use the law library. Plaintiff states that Hutchinson stood behind him while he was in the law library, causing Plaintiff to feel uncomfortable. Plaintiff states that, later on July 19, 2023, Hutchinson again escorted him to the law library where Plaintiff submitted a request for PLU status. Hutchinson was also allegedly present when Plaintiff was placed in handcuffs and a holding cell on July 20, 2023, and that he told Plaintiff he did not know why this had been ordered. Later, on September 21, 2023, following Plaintiff's release from Administrative Segregation, Hutchinson allegedly threatened Plaintiff with a disciplinary report and told Plaintiff things would get worse if Plaintiff continued to file inmate grievances. The Court finds that Plaintiff's allegations concerning the events of September 21, 2023, state a plausible retaliation claim against Defendant Hutchinson. Specifically, Hutchinson threatened adverse action against Plaintiff, and it can be inferred from the facts alleged that Hutchinson did

so knowing that Plaintiff had filed inmate grievances.

### Almeida

Plaintiff alleges that Defendant Almeida approved his request for PLU status. Plaintiff also states that Halbritter informed Almeida about Plaintiff inmate grievances and that, after being so informed, Almeida conspired with Halbritter to falsely accuse Plaintiff of a rules violation in order to have Plaintiff banned from the education department. The Court finds that these allegations support a retaliation claim against Defendant Almeida.

### Radu

After leaving the program office on September 21, 2023, the prison yard "abruptly put down." Plaintiff states that, following this, Defendant Radu placed Plaintiff in handcuffs and escorted him to his cell. As Plaintiff was approaching his cell, Radu told him that this is the treatment Plaintiff gets for filing inmate grievances and that Radu would find Plaintiff a cellmate to "take care of you." Once inside the cell, Radu allegedly called Plaintiff a "bitch and coward." Plaintiff told Radu that he would be filing an inmate grievance. Later, on October 4, 2023, Plaintiff was served with a rules violation report issued by Radu, which was later determined to be unfounded. The Court finds that these allegations plausibly state a retaliation claim against Defendant Radu, who is alleged to have known about Plaintiff's prior inmate grievances as well as Plaintiff's plan to file a grievance against him. Further, given this knowledge, the facts indicate that Radu took adverse action against Plaintiff by filing an unfounded rules violation report.

### Saavedra

Plaintiff filed staff misconduct complaints against Defendant Saavedra on August 28, 2023, and August 31, 2023. On October 5, Saavedra precluded Plaintiff from using the restroom while at the education department and stated: "I'm going to show you how we treat inmates who report staff misconduct." Id. The Court finds that these allegations plausibly state a retaliation claim against Defendant Saavedra who took adverse action against Plaintiff in the form of the restroom restriction and that this action was taken because Plaintiff had filed staff misconduct complaints.

///

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading.  See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the second amended complaint appears to otherwise state cognizable retaliation claims against Defendants Halbritter, Hutchinson, Almeida, Radu, and Saavedra, if no third amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED as follows:

1. The Clerk of the Court is directed to update the docket to terminate K. Gibbs, who is no longer named, as a defendant in this action.

2. Plaintiff may file a third amended complaint within 30 days of the date of service of this order.

Dated:  August 27, 2024

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE